**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | |
|---|---|
| **RODNEY PUGH,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 3:21-cv-279-CWB** |
| ) | |
| **KILOLO KIJAKAZI,**[1] ) | |
| **Acting Commissioner of** ) | |
| **Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

### I.    Introduction and Administrative Proceedings

Rodney Pugh ("Plaintiff") filed an application for Disability Insurance Benefits under Title II of the Social Security Act on November 29, 2018 wherein he alleged disability onset as of June 1, 2017 due to chronic lymphedema, degenerative bone disease, swelling, sleep apnea, insomnia, high blood pressure, erectile disfunction, post-traumatic stress disorder ("PTSD"), chronic headaches, hypertension, degenerative arthritis of the spine, hearing loss left ear, tinnitus, and eczema.  (Tr. 48, 97-98, 115).[2]  The claim was denied at the initial level on April 4, 2019, and Plaintiff requested *de novo* review by an administrative law judge ("ALJ").  (Tr. 48, 115, 117, 122-23).  The ALJ subsequently heard the case on June 15, 2020, at which time Plaintiff appeared *pro se* and testified.  (Tr. 48, 65-85, 92-94).  Testimony also was received from a vocational expert.  (Tr. 85-92).   The ALJ took the matter under advisement and issued a written decision on June 26, 2020 that found Plaintiff not disabled.  (Tr. 48-61).

---

[1]  Kilolo Kijakazi became Acting Commissioner for the Social Security Administration on July 9, 2021 and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2]  References to pages in the transcript are denoted by the abbreviation "Tr."

The ALJ's written decision contained the following enumerated findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2.  The claimant has not engaged in substantial gainful activity since June 7, 2018, a day after the prior initial denial determination (20 CFR 404.1571 *et seq.*).

3.  The claimant has the following severe impairments: left lower extremity lymphedema, hypertension, obstructive sleep apnea, and obesity (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b). The claimant could lift/carry twenty pounds occasionally and ten pounds frequently, sit six of eight hours, and stand/walk four of eight hours. He could occasionally push/pull with the left lower extremity. The claimant could occasionally climb ramps/stairs, balance, stoop, kneel, and crouch. He should never climb ladders/scaffolds, crawl, nor avoid work hazards (i.e., dangerous moving machinery, unprotected heights). The claimant should avoid concentrated exposure to extremes of heat/cold, vibration, and pulmonary irritants (i.e., fumes, odors, dust, gases, and poor ventilation) (i.e., Ex. 1A). He requires the option to change positions (sit/stand, stand/sit) at the workstation at thirty-minute intervals.

6.  The claimant is capable of performing past relevant work as a credit card control clerk, sedentary semi-skilled work. This work does not require the performance of work-related activities precluded by his residual functional capacity (20 CFR 404.1565).

7.  The claimant has not been under a disability, as defined in the Social Security Act, from June 7, 2018, a day after the prior initial denial determination, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 50, 52-53, 59, 61).  On February 10, 2021, the Appeals Council denied Plaintiff's request for review (Tr. 1-6), thereby rendering the ALJ's decision the final decision of the Commissioner. *See, e.g., Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Plaintiff now asks the court to remand the case for a new hearing and further consideration. (Doc. 12 at p. 16).  The court construes Plaintiff's supporting brief (Doc. 12) as a motion for summary judgment and the Commissioner's opposition brief (Doc. 16) as a competing motion for summary judgment.  As contemplated by 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the exercise of full civil jurisdiction by a United States Magistrate Judge (Docs. 20, 21), and the undersigned finds that the case is ripe for review pursuant to 42 U.S.C. § 405(g).  Upon consideration of the parties' submissions, the relevant law, and the record as a whole, the court concludes that Plaintiff's motion for summary judgment is due to be denied, that the Commissioner's motion for summary judgment is due to be granted, and that the final decision is due to be affirmed.

## II.     Standard of Review and Regulatory Framework

The court's review of the Commissioner's decision is a limited one.  Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.") (citations omitted).  The court thus may reverse the ALJ's decision only if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  Reversal is not warranted simply because the court itself would have reached a result contrary to that of the factfinder. *See*

*Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  Despite the deferential nature of its review, however, the court must look beyond those parts of the record that support the decision, must view the record in its entirety, and must take account of evidence that detracts from the evidence relied on in the decision.  *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *see also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3]  To make such a determination, the ALJ employs a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520 & 416.920.

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[3]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the burden of proof from step one through step four. *Id*. At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do so, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239-40. The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual, and combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*. at 1240.

---

[4] *McDaniel* is a Supplemental Security Income case. Nonetheless, the same sequence applies to claims for Disability Insurance Benefits brought under Title II. SSI cases arising under Title XVI therefore are appropriately cited as authority in Title II cases, and vice versa. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

III.    **Issues on Appeal**

Five issues have been raised on appeal: (1) whether Plaintiff knowingly and voluntarily waived his right to representation at the ALJ hearing; (2) whether the ALJ failed to fully and fairly develop the record for Plaintiff; (3) whether the ALJ erred in finding that Plaintiff did not have severe mental impairments; (4) whether the ALJ properly considered Plaintiff's impairments in combination; and (5) whether evidence submitted by Plaintiff warrants remand under sentence six of 42 U.S.C. § 405(g).  (Doc. 12 at pp. 1, 11).

IV.    **Discussion**

A.    **Waiver of Right to Representation at ALJ Hearing**

Plaintiff argues that waiver of his right to representation at the ALJ hearing was not an informed choice in that the ALJ failed to properly advise him of his options or confirm his understanding of the options regarding representation.  (Doc. 12 at p. 7).  In response, the Commissioner contends that Plaintiff was apprised of his right to representation on several occasions, voluntarily waived the right to representation, and cannot demonstrate any prejudice from the lack of representation.  (Doc. 16 at p. 5).

"A Social Security claimant has a statutory right, which may be waived, to be represented by counsel at a hearing before an ALJ." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). The right to counsel may be waived, however, provided the waiver is made knowingly and intelligently.  *Thomas-Joseph v. Comm'r of Soc. Sec.*, No. 21-11020, 2022 WL 1769134 at *2 (11th Cir. June 1, 2022) (citing *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)).  "A claimant cannot knowingly and intelligently waive this right where she is not adequately informed of it, either in a prehearing notice or at her hearing." *Clark v. Soc. Sec. Admin., Comm'r*, 848 F. App'x 858, 863 (11th Cir. 2021); *Tackett v. Comm'r of Soc. Sec.*, No. 21-11852, 2022 WL 2314095 at *4

6

(11th Cir. June 28, 2022) ("Although the right may be waived, the Commissioner 'has an obligation to notify the claimant of her right to counsel.'") (citations omitted); *Thomas-Joseph*, 2022 WL 1769134 at *2 (citing *Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982) (internal citation omitted)) ("In order for a waiver to be effective, the claimant must be properly apprised of her options concerning representation. The notice must inform the claimant of both the possibility of free counsel and the limitation on the recovery of attorney's fees."). "To show that she was denied a full and fair hearing, a claimant must also show prejudice," which "at least requires showing that the administrative law judge did not have all of the relevant evidence from the record before him or did not consider all of the evidence in the record before reaching his decision." *Clark*, 848 F. App'x at 863; *Tackett*, 2022 WL 2314095 at *4 ("Prejudice may exist where 'the record reveals evidentiary gaps which result in unfairness or clear prejudice.'") (internal quotation marks and citations omitted).

A review of the record reveals that in the initial denial notice dated April 4, 2019, the Commissioner advised Plaintiff that if he wanted help with his appeal he could have a friend, lawyer, or someone else help him. (Tr. 118). The notice informed Plaintiff that there were groups that could help him find a lawyer or give him free legal services if he qualified, that there were also lawyers who did not charge unless he won his appeal, and that his local Social Security office could give him a list of groups that could assist with the appeal. (Tr. 118). The notice also advised Plaintiff that the Commissioner must approve any attorney's fee before it could be collected and that the Commissioner would withhold up to 25 percent of any past due Social Security benefits to pay toward any such attorney's fee. (Tr. 118).

The request for hearing form completed by Plaintiff also notified him that he had a right to be represented at the hearing and that his local Social Security office could give him a list of legal

referral and service organizations to assist him in locating a representative.  (Tr. 122, 137).  After

receiving the request for a hearing, the SSA sent Plaintiff an acknowledgment of the request—

explaining the hearing process, apprising him of his right to representation, informing him that a

representative might represent him for free or on a contingency basis, and providing a list of

organizations that could provide assistance.  (Tr. 124, 127-30).  In the formal Notice of Hearing,

the SSA reiterated that Plaintiff could choose a representative to help him with his claim.  (Tr. 142,

147-48).  Moreover, prior to the hearing, someone from the hearing office contacted Plaintiff,

provided Plaintiff with information regarding his right to representation, and noted that Plaintiff

affirmed his understanding of that right.  (Tr. 249).

At the hearing, the ALJ likewise discussed Plaintiff's right to representation.  (Tr. 69).

The ALJ had the following exchange with Plaintiff:

> ALJ: ... Mr. Pugh, you do not have a representative. A representative could help
> you with asking questions, getting additional information, helping you think up
> grounds for your case that don't readily become apparent to you, or help you with
> a final argument. Do you have any questions about the right to be represented?
>
> CLMT:  No, ma'am.
>
> ALJ:  Do you want to continue with hearing without a representative?
>
> CLMT:  Yes, ma'am. I, I don't, I don't have representation.
>
> ALJ:  All right. Well, I, I notice that, Mr. Pugh, and just to let you know, under the
> Social Security Act, there is a provision that says if you want a representative, you
> can have one, and then I would postpone today and give you a chance to get one,
> or you can go ahead with the hearing, you don't have to have one.
>
> CLMT:  Yes, ma'am. I'm, I'm gonna go ahead with it.
>
> ALJ:  All right. And what I would say is, if at any point during the hearing you
> think you need a representative, you let me know and I'll stop the hearing and
> postpone it and give you a chance to get one. All right?
>
> CLMT:  Yes, ma'am.

(Tr. 69).

The record thus reflects that Plaintiff was properly informed of his right to representation and that Plaintiff knowingly and intelligently waived such right. Despite repeatedly being provided options for assistance, Plaintiff unequivocally told the ALJ that he wanted to proceed. Accordingly, Plaintiff's claim based upon lack of representation fails. *See Hunter v. Soc. Sec. Admin., Comm'r*, 705 F. App'x 936, 942 (11th Cir. 2017) (finding plaintiff validly waived right to counsel where record reflected that she was repeatedly informed—through notices, documents, a waiver-of-counsel form, and the ALJ—that she had the right to counsel or non-attorney representation).

### B.      Development of the Record

"Social Security proceedings are inquisitorial rather than adversarial," and "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). "Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record." *Graham*, 129 F.3d at 1422.[5] "This obligation requires the ALJ to develop the claimant's complete medical history for at least the 12 months preceding the month in which the application was filed, assist the Claimant in obtaining evidence from his or her treating sources, and order a consultative examination when such an examination is necessary to make an informed decision." *Rivera Perez*, 2021 WL 289052 at *2; 20 C.F.R. § 404.1512(b)(1)-(2).

---

[5] "The basic duty to develop the record rises to a 'special duty' where the claimant has not waived his or her right to representation and is not represented during the administrative proceedings." *Rivera Perez v. Comm'r of Soc. Sec.*, No. 6:20-CV-79, 2021 WL 289052 at *2 n.3 (M.D. Fla. Jan. 28, 2021) (citing *Brown*, 44 F.3d at 934-35 (emphasis added)). "By implication, where counsel has been waived, the special duty to develop the record does not take effect." *Robinson v. Astrue*, 235 F. App'x 725, 727 (11th Cir. 2007). Because Plaintiff did waive his right to representation, the ALJ had only a basic duty to develop the record.

The ALJ's obligation to develop the record "exists even if the claimant is represented by counsel or has waived the right to representation."  *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).  However, "[t]here must be a showing that the ALJ's failure to develop the record led to evidentiary gaps in the record, which resulted in unfairness or clear prejudice, before the court will remand a case for further development of the record." *Rodriguez-Torres v. Saul*, No. 8:18-CV-1982, 2019 WL 4267955 at *4 (M.D. Fla. Sept. 10, 2019), *aff'd sub nom. Torres v. Comm'r of Soc. Sec.*, 819 F. App'x 886 (11th Cir. 2020). "At a minimum, clear prejudice 'requires a showing that the ALJ did not have all of the relevant evidence before him in the record ... or that the ALJ did not consider all of the evidence in the record in reaching his decision.'" *Rivera Perez*, 2021 WL 289052 at *3 (quoting *Kelly v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985)); *Thomas-Joseph*, 2022 WL 1769134 at *2.  "Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *see also* 20 C.F.R. § 404.1512(a) (stating that "you have to prove to us that you are ... disabled.  You must inform us about or submit all evidence known to you that relates to whether or not you are ... disabled ... . This duty is ongoing and requires you to disclose any additional related evidence about which you become aware.").

Plaintiff argues that he was prejudiced because the record was not sufficiently developed and would likely have been more developed by a representative.  (Doc. 12 at pp. 8-10).  Plaintiff maintains that as a veteran who uses Veteran Affairs facilities for healthcare, there are likely more records and that the ALJ should have obtained those records—particularly psychological records and tests or evaluations underlying the VA's disability determination.  (*Id*. at pp. 8-9).  The court notes, however, that the administrative record reflects that the Commissioner indeed requested

medical records from the VA and that such records were included in the administrative record. (Tr. 249, 263-362, 406-504, 524-61).

Plaintiff further asserts that the record does not contain any disability evaluation assessment examinations or testing results. (Doc. 12 at p. 8). However, a claimant is permitted to submit additional evidence at each step of the review process, including to the Appeals Council. *See* 20 C.F.R. § 404.900(b). Here, Plaintiff's attorney received additional time from the Appeals Council to file additional evidence but did not include the alleged missing evidence. (Tr. 7, 13, 253-59). Plaintiff has not shown what evidence was missing or that the evidence would have changed the result; therefore, Plaintiff has failed to demonstrate that the record was not sufficiently developed or that he suffered any prejudice.

Finally, the ALJ's decision reflects that the ALJ considered Plaintiff's mental impairments when assessing his impairments and RFC. (Tr. 51-59). In addition to Plaintiff's testimony, the ALJ also considered the function reports, treatment notes, and opinion testimony. An ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). The "[o]rdering [of] a consultative examination is a discretionary matter for the ALJ and would be sought 'to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision' on the claim." *Banks for Hunter v. Comm'r, Soc. Sec. Admin.*, 686 F. App'x 706, 713 (11th Cir. 2017) (citation omitted); 20 C.F.R § 404.1519a(b) ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim."). Because the record contained sufficient evidence for the ALJ's determination, a consultative examination was not necessary.

Plaintiff references the VA disability rating decision and asserts that such information should have been included in the record. (Doc. 12 at p. 8 n.13-14, and p. 9). However, "[t]he ALJ is under no obligation under the Commissioner's revised regulations to address another agency's rating." *D.B. v. Comm'r of Soc. Sec.*, No: 4:20-cv-254, 2022 WL 613769 at *3 (M.D. Ga. Mar. 2, 2022). The new regulations state that "we will not provide any analysis in our determination or decision about a decision made by any other governmental agency ... about whether you are disabled, blind, employable, or entitled to benefits." 20 C.F.R. § 404.1504. The regulations further provide that "[d]ecisions by other governmental agencies and nongovernmental entities" are "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c)(1). However, the Agency "will consider all of the supporting evidence underlying the other governmental agency['s] ... decision" that was received as evidence. 20 C.F.R. § 404.1504; *Tomasello v. Comm'r of Soc. Sec.*, No. 6:21-CV-1153, 2022 WL 1045753 at *4 (M.D. Fla. Apr. 7, 2022). Here, the ALJ considered the VA medical records and cited to those records throughout the decision. (Tr. 51-52, 54-58).

Plaintiff also asserts that the ALJ failed to ask the VE whether an individual's need to elevate a lower extremity would impact his ability to perform competitive work or whether the vocational base would be eroded if an individual needed to stop work to use a pneumatic pump two or three times during the day. (Doc. 12 at pp. 9-10). "'In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.'" *Ingram*, 496 F.3d at 1270 (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir.2002)). However, the "hypothetical need only include 'the claimant's impairments,' not each and every symptom of the claimant." *Id*. (internal citation omitted). Moreover, an ALJ is "not required to include findings in the hypothetical that the ALJ

had properly rejected as unsupported." *Crawford*, 363 F.3d at 1161; *Zoslow v. Comm'r of Soc. Sec.*, 778 F. App'x 762, 764 (11th Cir. 2019). The ALJ thus was not required to ask the VE about symptoms that the ALJ found were not supported by the record. Plaintiff's further assertion that "VE testimony is typically incomprehensible to Plaintiffs, like a foreign language, which made the hearing unfair to him" (Doc. 12 at p. 10) is mere conjecture and unsupported by the record.

## C.   Findings as to Mental Impairments and Combination of Impairments

Plaintiff contends that the ALJ erroneously found that his mental impairments were non-severe. (Doc. 12 at p. 11). Plaintiff asserts that his ability to perform some activities of daily living does not mean that he is unimpaired in his mental ability to perform work-related activities in a competitive work environment. (*Id*.). As support, Plaintiff cites his statements and testimony, the psychological consultative examination of Jay Stewart Scott, Ph.D., and his VA disability rating. (*Id*. at pp. 12-13). Plaintiff further contends that the ALJ failed to consider the combined impact of his impairments. (*Id*. at p. 13).

"[A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source. [The Agency] will not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." 20 C.F.R. § 404.1521. An impairment or combination of impairments is "severe" if it "significantly limits [the plaintiff's] physical or mental ability to do basic work activities"[6] and persists for at least twelve consecutive months. 20 C.F.R. §§ 404.1520(c), 404.1505(a). "[T]he mere diagnosis of [a condition] says nothing about the severity of the condition." *Crans v.*

---

[6] Basic work activities are "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; [c]apacities for seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 CFR § 404.1522(b).

*Berryhill*, No. 3:16-CV-914, 2017 WL 4683933 at *5 (M.D. Ala. Oct. 18, 2017) (quoting *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)).  "[A] diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work."  *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). Plaintiff bears the burden of proving that an impairment is severe.  *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

"Step two is a threshold inquiry," *McDaniel*, 800 F.2d at 1031, which acts as a "filter" to eliminate claims involving no substantial impairment, *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).  "If the ALJ finds a claimant does not have a 'severe' impairment or combination of impairments, she should conclude the claimant does not have a disability."  *Vangile v. Comm'r, Soc. Sec. Admin.*, 695 F. App'x 510, 513 (11th Cir. 2017).  In the Eleventh Circuit, "the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two."  *Id*.  When an ALJ recognizes at least one severe impairment, the ALJ is not required to identify additional impairments at step two if the decision demonstrates that the ALJ properly considered all impairments at subsequent steps.  *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014).

At the fourth step of the sequential evaluation process, an ALJ must consider all medically determinable impairments, not just the "severe" impairments identified at step two.  *Id*.; 20 C.F.R. § 404.1545(a)(2).  The ALJ's responsibility is met when she considers all medical evidence in the record by referencing the claimant's "combination of impairments" at step three and stating that she considered "all symptoms" in assessing the RFC.  *Tuggerson-Brown*, 572 F. App'x at 951-52.

14

Importantly, the "mere existence" of an impairment does not reveal its effect on a claimant's ability to work or undermine RFC findings. *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).

At step two in this case, the ALJ satisfied the requirements of the threshold inquiry by finding that Plaintiff has severe impairments, namely left lower extremity lymphedema, hypertension, obstructive sleep apnea, and obesity.  (Tr. 50); *see Jamison*, 814 F.2d at 588 ("[T]he finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two.").  Because the ALJ found that Plaintiff has at least one severe impairment, the ALJ was not required to identify all of Plaintiff's severe impairments before moving to step three of the sequential evaluation process.  *See Tuggerson-Brown*, 572 F. App'x at 951-52; *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. A'ppx 890, 892 (11th Cir. 2013) ("[S]ince the ALJ proceeded beyond step two, any error in failing to find that [the claimant] suffers from the additional severe impairments of degenerative joint disease of the right knee or varicose veins would be rendered harmless."); *Delia v. Comm'r of Soc. Sec.*, 433 F. App'x 885, 887 (11th Cir. 2011) (although the ALJ erred in finding that that plaintiff's mental impairments were not severe, such error was harmless because the ALJ found other severe impairments at step two and considered the mental impairments at later steps).

Although the ALJ did not err at step two, the court must still review whether or not the ALJ considered all of Plaintiff's impairments, regardless of severity, in performing the next steps of the sequential evaluation process.  "[A]s long as the ALJ considered Plaintiff's severe impairments in combination with Plaintiff's non-severe impairments – including [his] alleged mental impairments – any potential error is harmless." *Branco v. Comm'r of Soc. Sec.*, No. 2:18-CV-633, 2020 WL 1329981 at *6 (M.D. Fla. Mar. 23, 2020) (citing *Griffin v. Comm'r of Soc. Sec.*,

560 F. App'x 837, 842 (11th Cir. 2014)).  Here, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p"; and the ALJ "also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c."  (Tr. 53).  The ALJ further stated that both "severe and nonsevere impairments [were] considered in the residual functional capacity." (Tr. 52).  Based upon such statements, the court concludes that the ALJ properly considered all of Plaintiff's impairments, whether severe or not, when considering the evidence of record.

Moreover, the ALJ thoroughly considered the four broad areas of mental functioning known as the "paragraph B" criteria in evaluating Plaintiff's mental impairments of depression and PTSD, both singly and in combination, and found that the impairments were nonsevere— as Plaintiff had no more than minimal limitation in his ability to perform basic mental work activities.  (Tr. 51-52).  Addressing the functional area "understanding, remembering or applying information," the ALJ found that Plaintiff had no limitation, noting that in his function report Plaintiff stated that he could prepare meals occasionally, pay bills, take medications without reminders, and drive, that he testified he could read and watch television while following along with the story, that he used the internet at times, and that his psychological consultative examination with Jay Stewart Scott, Ph.D. showed he had average intelligence, intact memory, and intact/good insight and judgment.  (Tr. 51, 77, 81-83, 207, 209-10, 401-02).

As to "interacting with others," the ALJ found that Plaintiff had mild limitation—as he reported that he was able to spend time with friends and family, deal appropriately with authority, live with others, and go to social events and groups with his spouse, that progress notes reflected he was cooperative and easily established rapport during his consultative examination, and that no

mental health treatment was noted.  (Tr. 51, 211, 401-02).  With respect to the third functional area, "concentrating, persisting or maintaining pace," the ALJ found that Plaintiff had no limitation—explaining that Plaintiff did not allege any limitations in this area of functioning: he said that he was able to drive, prepare meals occasionally, watch television, and manage funds; he testified that he was able to read and use the internet; and progress notes reflected normal attention and concentration on consultative examination with Dr. Scott.  (Tr. 51, 77, 81-83, 207, 209-10, 401).  Lastly, the ALJ found that Plaintiff had no limitation in the functional area of "adapting or managing oneself," noting that Plaintiff stated that he was able to handle self-care and personal hygiene, care for pets, and take care of his children and that progress notes reflected Plaintiff as having appropriate grooming and hygiene.  (Tr. 52, 208, 401).

The ALJ also thoroughly discussed the opinion of Dr. Scott, who conducted a psychological consultative examination of Plaintiff.  (Tr. 51-52, 54-55, 58).  The ALJ noted that Dr. Scott opined that Plaintiff "was able to understand basic directions and the intent of the exam" and that he "appeared to lack interpersonal skills required to relate to others in a work setting, though he seemed able to sustain attention needed to do repetitive tasks and he was able to handle day-to-day pressures of a work environment."  (Tr. 58, 400-03).  The ALJ found the opinion partially persuasive, stating that it was "consistent with the examination findings, but not the overall record evidence":

> The claimant reported some difficulty dealing with people because they make him agitated.  However, he had average intelligence and normal attention and concentration (Ex. 3F/2-3).  To the extent that the claimant does not like to be in crowds of five or more people and he has difficulty talking to other people, he has a history of skilled work, including dealing with people.  The claimant was not involved in mental health counseling and no evidence indicates any clinicians expressed concern regarding the claimant's psychological functioning.  The overall record is consistent with nonsevere mental impairments.

(Tr. 58, 401-02).

The ALJ further considered the February 14, 2019 opinion of Robert Estock, M.D., the State agency psychiatric consultant who opined that Plaintiff had no mental limitations.  (Tr. 58, 108).  Finding Dr. Estock's opinion persuasive, the ALJ stated that although Plaintiff "was previously assessed with a depressive disorder, Dr. Estock noted that this was a nonsevere impairment."  (Tr. 58-59, 108).  The ALJ noted that while Plaintiff stated that he had difficulty dealing with crowds and talking to people outside of his home and that he did not go shopping, he reported in the function report that he occasionally went to events with his spouse and social groups.  (Tr. 59, 211).

As to any argument about consideration of Plaintiff's VA disability rating, "[d]ecisions by other governmental agencies and nongovernmental entities" are "inherently neither valuable nor persuasive."  20 C.F.R. § 404.1520b(c)(1).  However, the Agency "will consider all of the supporting evidence underlying the other governmental agency['s] ... decision" that was received as evidence.  20 C.F.R. § 404.1504.  Here, the ALJ undoubtedly considered Plaintiff's VA records:

> The record contains annual Veteran's Administration Eligibility and Means Tests from 2018 to 2020 noting that the claimant was 50 to 90% disabled due to service connected impairments and 100% unemployable (Ex. 4F/72, 5F/22, 7F/39). The undersigned has carefully considered this information. Nevertheless, a decision by the VA about whether the claimant is disabled is based on its rules, which are different than the standards used under the Social Security Act. The VA's ratings are based upon the mere diagnosis of, and treatment for, the alleged impairments, rather than on the functional limitations caused by the impairments. As such, the claimant's VA rating, regarding his ability to work within the military, has little to no relevance to the disability determination the undersigned must make. Therefore, a determination made by another agency that a claimant is disabled is not binding on the Social Security Administration and is not persuasive, in accordance with 20 CFR 404.1520b(c).

(Tr. 58).  The ALJ also stated that the "undersigned has carefully considered all of the record evidence, mindful of the claimant's Veteran's Administration disability status."  (Tr. 56).

Plaintiff additionally argues that his ability to attend some activities of daily living does not mean that he is unimpaired in his mental ability to perform work-related activities in a competitive work environment.  (Doc. 12 at p. 11).  "'While the ability to engage in daily living activities does not automatically disqualify a claimant from receiving disability benefits, the Commissioner may nonetheless consider a claimant's daily activities, among other evidence, in determining whether a claimant is disabled.'"  *Robinson v. Kijakazi*, No. 21-21603-CIV, 2022 WL 18155656 at *6 (S.D. Fla. Dec. 21, 2022), *report and recommendation adopted sub nom. Robinson v. Comm'r of Soc. Sec.*, No. 21-21603, 2023 WL 136556 (S.D. Fla. Jan. 9, 2023) (citations omitted); *Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 663 (11th Cir. 2010) ("Although a claimant's admission that she participates in daily activities for short durations does not necessarily disqualify the claimant from disability, that does not mean it is improper for the ALJ to consider a claimant's daily activities at all.") (internal citation omitted); *see also* 20 C.F.R. § 404.1520c(c)(5) (stating that an ALJ may consider any other relevant factors "that tend to support or contradict a medical opinion"); *Lewno v. Kijakazi*, No. 8:21-CV-1334, 2022 WL 3999282 at *5-6 (M.D. Fla. Sept. 1, 2022); *see also* 20 C.F.R. § 404.1529(c)(3)(i) (stating that an ALJ will consider a claimant's daily activities in evaluating the limiting effects of the claimant's impairments and related symptoms); *Ochmanski v. Kijakazi*, No. 21-24429-CIV, 2023 WL 2283212 at *18 (S.D. Fla. Feb. 2, 2023), *report and recommendation adopted*, No. 21-24429-CIV, 2023 WL 2266245 (S.D. Fla. Feb. 28, 2023).

The ALJ expressly noted the following as to Plaintiff's daily activities:

> The claimant reported rather limited daily activities, though the record shows some normal functioning. As discussed above, in December 2018, the claimant stated that he feeds and lets his pets outside. He prepares meals occasionally. The claimant does laundry, ironing, and he mows the lawn with a riding lawnmower. He drives occasionally, though he shops by phone or online. The claimant goes with his spouse to events and he goes to social groups to interact with others (Ex. 5E). At

> the hearing, he testified that he is able to cook complete meals twice a week. He does some housework if his daughter is unable to do the chores. The claimant stated that he watches television, reads, uses the internet, and takes care of his children. Finances appear to be a large impetus. Reported activities are consistent with a range of light work. Though the claimant has severe impairments, the record does not show work-precluding limitations for a finding of disabled under the Social Security Act.

(Tr. 57).  In addition to Plaintiff's daily activities, the ALJ also considered the objective medical records, Plaintiff's subjective statements, and the opinion evidence of record.  (Tr. 55-59).  The ALJ ultimately concluded as follows:

> Nothing in the claimant's clinical signs suggests that the residual functional capacity assessment is unreasonable. Nor does the medical record reflect a treatment regimen inconsistent with such limitations. In sum, the above residual functional capacity assessment is supported by the medical evidence of record, routine care for hypertension follow up, treatment of left lower extremity lymphedema, the opinions of State agency psychiatric consultant, Dr. Estock, M.D., and the opinion of Dr. Hogan, M.D., State agency medical consultant, reported activities, and inconsistencies in the claimant's statements with record evidence.

(Tr. 59).

The ALJ's decision reflects that the ALJ properly considered the record as a whole, and Plaintiff therefore has failed to show that the ALJ committed reversible error.[7]

### D.    Sentence Six Remand

Plaintiff requests a remand under sentence six of 42 U.S.C. § 405(g) for consideration of a signed affidavit dated June 19, 2021 and a VA rating decision dated August 19, 2019.  (Doc. 12 at pp. 14-15).  Sentence six of § 405(g) reads as follows:

---

[7] Plaintiff erroneously argues that the ALJ had a heightened duty to develop the record and that the RFC was based on an incomplete record.  (Doc. 12 at p. 13).  As stated previously, because Plaintiff waived his right to representation, the ALJ had only a basic duty to develop the record.

> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

42 U.S.C. § 405(g).  Under a sentence six remand, a "district court does not affirm, modify, or reverse the Secretary's decision; it does not rule in any way as to the correctness of the administrative determination." *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).  Instead, "the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Id.*

To obtain a sentence-six remand, "'the claimant must establish that: (1) there is new, noncumulative evidence; (2) the evidence is material, that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit the evidence at the administrative level.'"  *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 821 (11th Cir. 2015) (quoting *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir.1986)) (internal quotation marks omitted).  "Accordingly, sentence six encompasses only those instances in which 'the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding.'"  *Gordon v. Soc. Sec. Admin., Com'r*, 625 F. App'x 512, 514 (11th Cir. 2015) (citation omitted).

In his affidavit, Plaintiff states that to alleviate his edema he elevates his legs and must use a lymphedema pump four times a day to help push the fluid out of his legs.  (Doc. 12 at p. 15; Tr. 20).  Plaintiff also states that he did not recall signing a waiver at the ALJ hearing and that, based on the ALJ's timing and tone, he thought it was too late to stop the proceedings in order to find a lawyer.  (*Id.*).  This information is neither new nor material.  The information within Plaintiff's affidavit is already included in the administrative record.   Plaintiff mentioned in his function report that each day he elevated his legs and used his "compression machine" for several hours a day.  (Tr. 207).  Plaintiff also testified at the hearing that he used a machine four times a day to help pump the fluid from his legs and aid in the circulation in his legs.  (Tr. 75-76).  Moreover, Plaintiff's testimony and statements concerning waiver of his right to representation is included in the transcript of the hearing.  (Tr. 69).

Plaintiff also asserts that the court should remand for consideration of an August 19, 2019 VA rating decision.  (Doc. 12 at p. 16; Tr. 21-29).  As stated previously, the ALJ is under no obligation to address the VA's rating.  *D.B.*, 2022 WL 613769 at *3.  "Decisions by other governmental agencies and nongovernmental entities" are "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c)(1).  Here, the ALJ considered the VA medical records that were received as evidence and cited to those records throughout the decision.  (Tr. 51-52, 54-58, 419, 421, 423, 425, 429-31, 435-37, 440, 441, 443, 449, 464, 476, 487, 494, 503, 529-30, 533, 535-538, 546, 561).  The ALJ's decision reflects that the ALJ considered the entire record, including VA examination records and other records, in determining Plaintiff's RFC.  The VA letter that Plaintiff now presents is not material and therefore does warrant remand under sentence six.

V.      **Conclusion**

After carefully and independently reviewing the record, and for the reasons stated above,

the court concludes as follows:

- that Plaintiff's motion for summary judgment (Doc. 12) is due to be **DENIED**;

- that the Commissioner's motion for summary judgment (Doc. 16) is due to be **GRANTED**; and

- that the Commissioner's decision is due to be **AFFIRMED**.

A separate judgment will issue.

**DONE** this the 11th day of September 2023.

_____

**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**